IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JIMMY DARRELL GILES**,

*Plaintiff*,

*v.*

**CHRISTIAN LEE DEDMON, et al.**,

*Defendants*.

CAUSE NO. 3:21-CV-766-CWR-LGI

**ORDER**

Before the Court is a motion for judgment on the pleadings or, alternatively, motion for summary judgment premised upon qualified immunity, filed by defendants Christian Lee Dedmon, Luke Stickman, Darian Laurant Tobias, Rankin County, and Bryan Bailey. Docket No. 38. The matter is fully briefed. On review, the motion will be granted.

**I. Factual and Procedural History**

The following allegations are drawn from the Second Amended Complaint.

On the morning of Sunday, December 9, 2018, Jimmy Darrell Giles heard AR-15 gunfire coming from his next-door neighbor's house. He had previously complained about his neighbor's gunfire to the Rankin County Sheriff's Office, to no avail, and felt that another complaint would be futile. So, he "conducted a defensive safety gun check drill, safely firing his grandfather's revolver into his ground." Docket No. 34 at 4.

Giles' neighbor did not appreciate this "drill," and called the Rankin County Sheriff's Office on Giles. Deputies Christian Lee Dedmon, Luke Stickman, Darian Laurant Tobias

responded to the call.[1] They started their inquiry at the neighbor's house, then came to interview Giles. Things got heated; words were exchanged. Giles called Deputy Tobias a "stinking nigger" and Deputy Stickman called Giles a "Nazi." The Deputies then returned to the neighbor's house.

Giles says this was when the Deputies decided to unlawfully arrest him. They returned to Giles' house, crossed his fence line with weapons drawn, and arrested Giles. During this exchange, Deputies Stickman and Tobias both threatened to "return and rape [Giles'] mother." *Id.* at 7. Deputy Dedmon said that Giles was being charged with "failure to comply." *Id.* Giles was jailed for approximately 24 hours before being released on bond.

Later, Deputy Dedmon charged Giles with disorderly conduct, Deputy Stickman charged Giles with resisting arrest and disturbance of the peace, and all three Deputies charged Giles with retaliation against a public servant. Giles says their supporting affidavits were false. State-court criminal proceedings commenced.

This litigation followed. In it, Giles claims that the Deputies unlawfully arrested him and then fabricated evidence to support the charges. He notes the various costs he has incurred in defending himself in the state courts of Mississippi, as well as the damage to his fence that the Deputies caused.

Giles says that in 2020, the retaliation against a public servant charge was remanded (i.e., dismissed) "in the interest of justice." *Id.* at 12. He adds that a special prosecutor tried to drop the remaining charges but was prevented from doing so by Sheriff Bryan Bailey. Then, in 2021, the Rankin County Justice Court found insufficient evidence to proceed on the

[1] The movants' brief says that Deputy Tobias is in truth *Corporal* Tobias. As this is a 12(c) motion, the Court defers to the language used in the Second Amended Complaint. *See* Docket No. 34 at 5.

disorderly conduct and resisting arrest charges. Giles was convicted in that forum of disturbance of the peace. He has appealed.

Giles brought this action against the three Deputies involved in his arrest and detention (all in their individual capacities), Sheriff Bailey (in his individual capacity), Rankin County, and two of his neighbors.[2] He asserts causes of action for retaliation, false arrest, wrongful prosecution, and deprivation of due process, invoking the First, Fourth, and Fourteenth Amendments to the United States Constitution.

The Deputies, the Sheriff, and Rankin County (together, "the movants") now say that the Second Amended Complaint is legally insufficient or, in the alternative, that they are entitled to summary judgment. The movants have specifically invoked the defense of qualified immunity. Giles disagrees that the complaint is insufficient and denies that the Deputies are entitled to qualified immunity.

## II. Legal Standards

### A. Judgment on the Pleadings

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

[2] The neighbors have not responded to the Second Amended Complaint.

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted).

**B. Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

**C. Qualified Immunity**

"Qualified immunity shields government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (quotation marks and citation omitted). "More precisely, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quotation marks, citation, and brackets omitted).

When qualified immunity is sought at the summary judgment stage, the Court engages in a two-step inquiry. "First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (citations omitted). "If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (citations omitted). This is determined "based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* (citations omitted).

**III. Discussion**

We begin with the straightforward matters. The Court agrees with the movants that the Second Amended Complaint does not state plausible claims for relief against Sheriff Bailey and Rankin County. Looking specifically at the Second Amended Complaint's factual averments, Sheriff Bailey is alleged to have done nothing more than advocate on behalf of pending charges to a prosecutor. *See* Docket No. 34 at 12. As for Rankin County, the Second Amended Complaint does not articulate a policy or custom of constitutional violations; it concerns the treatment of Giles and Giles alone. The argument that Sheriff Bailey's actions render the County automatically liable is unavailing, since the Sheriff is not alleged to have violated the Constitution. Giles' backup argument—that Rankin County should be liable for failing to have body cameras—cannot be considered, as it was contained only in a response brief, rather than the operative complaint. *Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013).

The Court further agrees with the movants that Giles has abandoned his Fourteenth Amendment due process claim by failing to defend it in his response brief. *See Davis v. Hinds Cnty., Mississippi*, No. 3:15-CV-874-CWR-LRA, 2016 WL 2994097, at *2 (S.D. Miss. May 23, 2016). Thus, what remains are Giles' retaliation and false arrest claims.

This is where the case gets more complicated. Recall that the movants have sought judgment on the pleadings under Rule 12(c) *or* summary judgment under Rule 56. The Court is not so sure it should take up the summary judgment portion of that request. No discovery has been taken. (Discovery was automatically stayed, in fact, as is appropriate when qualified immunity has been invoked.) Despite the lack of discovery, however, the parties have collectively attached more than 20 exhibits to their motion and response, including arrest reports, emails, numerous videos, Google Earth images, and a state-court hearing transcript. The movants brief, meanwhile, admits that "the officers tell a vastly different story" than the one laid out in the Second Amended Complaint. Docket No. 39 at 5. Because the Court remains unconvinced that it should examine competing evidence at this early stage, it will not reach the summary judgment motion.

In what follows, then, the Court will proceed to view the Second Amended Complaint through the Rule 12(c) standard.

**A. False Arrest**

Because the Deputies lacked a warrant when they arrested Giles, his false arrest claim turns on whether the Deputies had probable cause to arrest him for any violation of Mississippi law. *See Deville v. Marcantel*, 567 F.3d 156, 164-65 (5th Cir. 2009).

Probable cause is "a showing of the probability of criminal activity." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quotation marks and citations omitted). The

standard "requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." *Id.* A proper showing of probable cause requires "more than mere suspicion" but less than "proof beyond a reasonable doubt." *Id.*

In Mississippi, a person cannot be arrested for "resisting arrest, disorderly conduct, public profanity, [or] disturbing the peace" simply for cursing out a law enforcement officer. *Collins v. State*, 223 So. 3d 817, 818 (Miss. Ct. App. 2017). "[L]aw enforcement officers must endure verbal abuse." *Odem v. State*, 881 So. 2d 940, 948 (Miss. Ct. App. 2004). As the Supreme Court put it, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462–63 (1987).

In this case, however, Giles admits that he did more than speak his mind. He also fired his weapon in direct, intentional response to his neighbor's Sunday morning lawful firearms activity. And the combination of those things—Giles' words plus his conduct—could lead a reasonable law enforcement officer to think they had probable cause to arrest Giles for breach of the public peace, as that term is defined under Mississippi law. *See* Miss. Code Ann. § 97-35-15(1) ("Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor . . . ."). That code section matches the situation here. *See also Simmons v. Fair*, No. 1:19-CV-38-SA-DAS, 2020 WL 1539935, at *3

(N.D. Miss. Mar. 31, 2020), *aff'd,* No. 20-60297, 2020 WL 6053365 (5th Cir. Oct. 13, 2020) (engaging in similar analysis for Mississippi's disorderly conduct statute).[3]

For these reasons, Giles' false arrest claim is dismissed on the pleadings.

### B. First Amendment Retaliation

The final issue is whether Giles' First Amendment retaliation claim may proceed.

In this Circuit, "when a person's conduct gives an officer probable cause to believe that she is guilty of a crime, that person does not taint a proper arrest by contemporaneously shouting 'police officers are corrupt.'" *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008).[4] The question is whether the arrest was supported by probable cause. *Id.*

Here, as just discussed, the Court has found that Giles' arrest was supported by probable cause. Accordingly, his First Amendment retaliation claim cannot proceed.

## IV. Conclusion

The motion is granted.

**SO ORDERED**, this the 5th day of December, 2022.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[3] In addition, the Fifth Circuit has been clear that "[a] mistake reasonably made as to probable cause justifies qualified immunity." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008); *see also Haggerty v. Texas S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). In this case, even if the Deputies erred, the Court finds that their reasonable mistake would entitle them to qualified immunity.

[4] This principle is not absolute, *see Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945 (2018), but the factors that subjected the City of Riviera Beach to *Monell* liability are not present here.